## A. E. HORD ET AL. v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

Decided June 20, 1903.

**1.—Practice—Depositions.**

The proper way to attack a deposition as not regularly and correctly taken and returned, is by motion to suppress.

**2.—Same—Witness—Impeachment.**

On the trial a witness, who testified for the plaintiffs by deposition, was introduced by the defendant and in her evidence she stated that in one particular her deposition, as it read, made her state exactly the contrary to what she really did state. The plaintiffs then offered to prove by the notary who took the deposition the proceedings connected with that taking, showing that the deponent after making her answers to interrogatories had them read over to her and approved them before signing the same. This proposed proof was excluded upon the objection that the plaintiffs could not thus impeach their own witness. Held error, because, first, the witness being called by the defense to give affirmative testimony became, to that extent at least, a defense witness; second, because the oral testimony would tend to rebut the oral testimony of the deposition witness against her deposition, and, third, because the testimony would tend to show that the deposition witness had made contradictory statements.

**3.—Same—Charge of Court.**

A charge of the court which imparts undue prominence to conflicting theories of a case is, under any circumstances, objectionable.

**4.—Same—Damages—Negligence—Proximate Cause.**

The previous negligence of the deceased would not defeat a recovery if the evidence shows that the puffing and blowing off of steam by the defendant company's locomotive, which proximately caused deceased's horse to run away and kill him, occurred after he had gotten control of the horse, since such previous negligence would not be the proximate cause of his death.

**5.—Same—Weight of Evidence.**

See the opinion for a charge of the court held obnoxious as upon the weight of evidence.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*Stuart & Bell,* for appellants.

*Eldridge, Gardner & Midkiff* and *J. W. Terry,* for appellee.

SPEER, ASSOCIATE JUSTICE.—Appellants, the surviving wife and children of H. C. Hord, deceased, sued the appellee for damages for injuries resulting in the death of said Hord, and from an adverse verdict and judgment have appealed.

Upon the trial of the cause Mrs. Tennie Benge testified by deposition for the appellants, in part as follows: "I saw the accident on August 29, 1901, that resulted in Mr. Hord's death. * * * He was driving north from the freight depot. He was riding in his buggy. He was north of the depot and was going north in the direction of the mattress factory. The horse got scared at an engine on the Santa Fe.

The horse ran away and Mr. Hord was killed. The engine was north of the horse and was backing south on the track of the Gulf, Colorado & Santa Fe Railway. It was moving and going south, was making a noise by the steam puffing and blowing off. The noise caused by the puffing and blowing off of the steam could easily be heard where I was. * * * Mr. Hord seemed to have perfect control of the horse until the horse was frightened by the engine puffing and blowing off steam. After that he seemed to lose control of the horse, and could do nothing with him. * * * It was making a good deal of noise. * * * It seemed to me that this engine made more noise than was usually made by other engines."

The latter part of the above testimony to the effect that Hord had control of his horse until the engine began puffing and blowing off steam and that the noise of this engine was more than was usually made by other engines, was in response to appellee's cross-interrogatories. During the progress of the introduction of appellee's testimony this witness was placed upon the stand and testified: "I gave a deposition in this case. We read the answers over as we wrote them down. It is not correct in my deposition where it says that this engine made more noise than was usually made by an engine; I did not say that. I answered that it made no more noise. I didn't understand the answer to mean that it made more noise than engines usually did. No suggestions were made to me as to how I was to answer the interrogatories. When the question was first asked I meant to answer it that the engine made no more noise than engines usually did. The engine going across Scott street made no more noise than engines usually do. * * *" And further upon cross-examination, she said: "I don't know whether the switch engine scared Mr. Hord's horse or not. I saw it back down. I don't know whether the horse got scared at the engine, but it was scared."

Appellants then offered to prove by S. K. Rudolph, the notary who took the depositions of the witness, that "said Mrs. Tennie Benge was very careful in giving her answers to the deposition taken by me (him) in said cause, and that she held the interrogatories in her hand and dictated the answers, she sitting by my (his) side, and that I (he) read each answer over to her as soon as it was written down, and she approved it before I (he) passed to the next interrogatory." Upon the objection of appellee upon the grounds that appellants could not thus impeach their own witness, the court excluded the evidence, and the exception taken to such ruling, in our opinion, presents error which necessitates the reversal of the judgment.

In the first place the appellants should have objected to the line of interrogatories which sought to impeach the witness' deposition. The remedy of appellee, if the depositions had not been regularly and correctly taken and returned, was by motion to suppress, and not the plan pursued. Railway v. Long, 65 S. W. Rep., 863. But there is no need

for a digression. The court could only pass upon questions presented. And moreover he was only called upon to pass upon the particular objection made to the proffered testimony, i. e., that appellants could not thus impeach their own witness. The witness having been called by the appellee for the purpose of giving affirmative testimony in its behalf, she thereupon to this extent, at least, became appellee's witness. Gaines v. State, 53 S. W. Rep., 624; Woodward v. State, 58 S. W. Rep., 142.

It can not be said that this error is harmless because the officer's certificate sufficiently attests the correctneses of the witness' answers. His oral testimony would tend to contradict and rebut the testimony of Mrs. Benge, and as against the objections made should have been admitted. It was undeniably prejudicial to appellants to have the verity of their depositions thus assailed without being allowed to rebut the damaging testimony by the officer whose certificate was thus impeached.

The proposed testimony further tended to show that the witness had made prior contradictory statements and should perhaps for that reason have been admitted, and this, too, whether she be treated as appellee's or appellants' witness. Railway v. Mitchell, 21 Texas Civ. App., 463; Nussbaum v. Railway, 57 S. W. Rep., 249; Hays v. Railway, 106 Fed. Rep., 48; Greenleaf on Evidence, sec. 444; Thompson on Trials, sec. 512.

The charge of the court on the whole is probably subject to the criticism that too much prominence is given the appellee's theory of the case, and especially to the issue of deceased's contributory negligence. Lumsden v. Railway, 67 S. W. Rep., 168.

It is contended by appellants that the eleventh paragraph of the court's charge is erroneous wherein it directs a verdict for appellee in the event deceased was guilty of negligence in getting into his buggy, because the evidence raised the issue that he had gotten control of the horse after getting into the buggy, and was thrown out by his horse being again or further frightened. It is not necessary in view of the reversal for us to pass upon the sufficiency of the evidence to raise this issue, but we will add that if upon another trial the testimony tends to show that the puffing and blowing off of steam which proximately caused deceased's horse to run away and kill him, occurred after he had gotten control of his horse, then deceased's previous negligence would not preclude a recovery; because not the proximate cause of his death.

The third section of the court's charge was as follows: "If you find that said horse became frightened and ran away on account of a whistle by the said engine, or on account of said engine popping off steam, this alone would not render the defendant liable for the death of said Hord, and you can not find for the plaintiffs unless you further find that the defendant's employes operating said engine were guilty of negligence by causing or permitting said engine to make more or greater noise by whistling or popping off steam than persons of ordinary care operating

said engine under the same circumstances would have caused or permitted, and unless you further find that such more or greater noise, if there was such, was the cause of said horse becoming frightened."

This charge is objected to because it is upon the weight of the evidence and assumes that noise by whistling and popping off steam was necessary at such place and this objection is not without force, and this feature should be eliminated from the charge upon another trial. Reversed and remanded.

*Reversed and remanded.*