## GULF, C. & S. F. RY. CO. et al. v. HARRELL et al. (No. 6574.)

(Court of Civil Appeals of Texas. Austin. May 2, 1923. Rehearing Denied May 23, 1923.)

1. Trial ⬳366—Objection to submission of more than one issue in one question, not made before case was submitted to jury, was waived.

Under Rev. St. art. 1971, objection that five grounds of negligence alleged in petition were improperly submitted to jury in one question, which objection was not presented before case was submitted to jury, was waived.

2. Appeal and error ⬳742(5)—Objection that charge was on weight of evidence, not submitted under any proposition, could not be considered on appeal.

Objection that charge was on weight of evidence, not submitted under any of appellants' propositions, could not be considered on appeal.

3. Trial ⬳352(5)—Question held not objectionable as submitting to jury issues of negligence and of injuries in one question, where undisputed evidence showed injuries.

Though, under Rev. St. art. 1971, not more than one issue of fact should be submitted to jury in one question, questions whether sheep in shipment were injured by railroad's negligence, and, if so, how many, were not objectionable as submitting issues of negligence and of injuries, where undisputed evidence showed injuries.

4. Evidence ⬳486, 498½—Market value held matter of opinion and liberality shown as to qualifications of witness.

Market value is at best only matter of opinion, and considerable liberality is shown as to qualifications of witness to testify thereon.

5. Witnesses ⬳380(5)—Party misled by own witness and surprised at his testimony may show witness made statements different from his testimony.

Generally party may not impeach his own witness, and this is absolute as to witness's general reputation, but, where party has been misled by witness, and is surprised at his testimony, he may show that he made statements different from his testimony at trial.

6. Witnesses ⬳392(1) — Previous written statement held admissible to impeach testimony on cross-examination.

Where plaintiff was surprised at testimony of his witness on cross-examination contradicting his previously written statement to plaintiff, such statement, though inadmissible as hearsay to show truth thereof, was admissible to impeach witness.

7. Carriers ⬳218(7)—Shipper's recovery for sheep killed or lost in transportation held limited to value placed thereon by contract.

Shipper's recovery for sheep killed or lost in transit while railroad was under federal control was limited to value placed thereon by contract of shipment.

8. Carriers ⬳218(7)—Under contract, shipper held entitled to recover actual damages found by jury not to exceed value fixed by contract.

Under contract for shipment of sheep, placing value of $3 per head thereon, shipper was entitled to actual damages of $1 a head found by jury, and was not limited to such proportion of $1 as $3 bore to actual value of sheep, since contract, being at least ambiguous, should be construed most strongly against railroad.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by C. K. Harrell and others against the Gulf, Colorado & Santa Fé Railway Company and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded, with instructions.

Snodgrass & Dibrell, of Coleman, and Terry, Cavin & Mills and O. B. Wigley, all of Galveston, for appellants.

Baker & Weatherred, of Coleman, for appellees.

### Findings of Fact.

JENKINS, J. Appellees shipped three cars of sheep from Denver, Colo., to Santa Anna, Tex. They were reshipped, under a new contract, at Amarillo, Tex., to the same destination. Appellees alleged that some of the sheep were killed, some were lost, and the remainder were damaged by negligence of appellants. The case was submitted upon special issues as follows:

"Question No. 1: Were any of the sheep in question injured by the negligence of the defendant, his servants, agents, or employés in the manner alleged in plaintiff's petition; answering 'yes' or 'no'? Answer: Yes.

"Question No. 2: If your answer to question No. 1 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer: How many of the sheep in question were injured by the negligence of the defendant, his servants, agents, or employés, in the manner alleged in plaintiff's petition? Answer: Yes; all.

"Question No. 3: If your answer to question No. 1 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer:

Did any of said sheep die from injuries. if any, caused by the negligence, if any, of the defendant, his servants, agents, or employés? Answer: Yes.

"Question No. 4: If your answer to question No. 3 is 'No,' then you need not answer this question; if it is 'Yes,' then you will answer: How many of said sheep died from injuries, if any, caused by the negligence, if any, of the defendant, his servants, agents, or employés? Answer: Yes; 2 head.

"Question No. 5: If your answer to question No. 3 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer: What would have been the reasonable market cash value per head of said sheep that died, if any, from injuries caused by the negligence of the defendant, if any, at Santa Anna, Tex., at the time and in the condition in which said sheep should have arrived there? Answer: $12 per head.

"Question No. 6: Were any of the sheep in said shipment lost by the defendant, his servants, agents, or employés? Answer: Yes.

"Question No. 7: If your answer to question No. 6 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer: How many of said sheep, if any, were lost by the defendant, his servants, agents, or employés? Answer: 5.

"Question No. 8: If your answer to question No. 6 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer: What would have been the reasonable cash market value per head of said sheep that were lost, if any, at Santa Anna, Tex., at the time and in the condition in which said sheep should have arrived there? Answer: $8 per head.

"Question No. 9: If your answer to question No. 1 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer: What would have been the reasonable cash market value, per head, at Santa Anna, Tex., of the sheep, if any, that were injured, by the negligence, if any, of the defendant, his servants, agents, or employés, that did not die at the time and in the condition in which said sheep should have arrived at Santa Anna, Tex.? Answer: $12 per head for ewes; $8 per head for muttons.

"Question No. 10: If your answer to question No. 1 is 'No,' then you will not answer this question; if it is 'Yes,' then you will answer: What was the reasonable cash market value per head, at Santa Anna, Tex., of the sheep, if any, that were injured by the negligence, if any, of the defendant, his servants, agents, or employés, and that did not die, at the time and in the condition in which said sheep did arrive at Santa Anna, Tex.? Answer: $11 per head for ewes; $7 per head for muttons."

The evidence sustains the verdict of the jury. There were some special issues requested by defendants and given by the court, which are immaterial for the purposes of this decision.

## Opinion.

[1] Appellants' first and second propositions are:

"(1) Not more than one issue of fact can be properly submitted to the jury in one question.

"(2) When five separate and distinct grounds of negligence are alleged in petition, a special issue requiring the jury to find if plaintiffs' sheep had been injured by the negligence of the defendant 'in the manner alleged in plaintiffs' petition' is erroneous and improper, because submitting more than one issue of fact in one question."

Propositions Nos. 3, 4, and 5 present this same issue. The objection urged by appellants would be well taken if they had made such objection to the charge of the court. Under our statute, all objections not presented before the case is submitted to the jury are to be deemed as waived.

[2, 3] The objections urged to special issues Nos. 1 and 2 were that the question submitted was on the weight of the evidence, in that it assumes that the carrier was negligent, and submits more than one issue of fact, to wit, the question of negligence and the question of injuries. The first objection that the charge is upon the weight of the evidence is not submitted under any of appellants' propositions. The second objection, it will be seen, does not present the issue in proposition No. 1 as to submitting the different grounds of negligence alleged, but only that the two issues of fact submitted were as to negligence and as to injuries.

While it has been uniformly held that under our statute (article 1971) not more than one issue of fact should be submitted to the jury in one question, it has been held by this court, in Railway v. Blackstone, 217 S. W. 210, that, where one of the issues embraced in the question is as to an undisputed fact, the same will not be considered as an issue submitted to the jury. In the instant case the undisputed evidence showed that the sheep were injured; and therefore this was not an issue of fact to be submitted to the jury. This being eliminated, the only issue submitted in questions Nos. 1 and 2 was as to the negligence of the appellants.

[4] Appellants assign as error permitting witness Featherston to testify as to the market value of sheep at Santa Anna. Market value is at best only a matter of opinion, and considerable liberality has been shown by the decisions in this state, and we think properly so, as to the qualification of the witness to speak as to market value. We do not think there was any error in admitting this testimony; and also that other evidence of qualified witnesses was sufficient to establish the market value of sheep at Santa Anna at the time alleged.

[5, 6] Appellants assign error upon the refusal of the court to permit them to introduce a written statement of the witness John Potter for the purpose of impeaching his testimony given on the trial of this case. Potter was a witness for appellants. Upon his direct examination he testified that the

sheep did not show material injury upon their arrival at Santa Anna. Upon cross-examination by appellees this witness testified that the sheep were in a worse condition than any shipment he had ever seen; that they were in a bad shape; and that they had bare spots where the wool had been eaten off of their hips. Thereupon appellants offered to prove that their attorney had never talked to this witness, except a few minutes before he was put upon the stand; that at that time the attorney showed the witness the following written statement, made by him a short time after the sheep had arrived at Santa Anna:

"I remember the shipment of three cars sheep consigned to C. K. Harrell from Denver, Colo., that arrived here about November 10, 1919. I helped drive them sheep part of the way to the ranch. I also had these sheep for sale and showed them two different times. One of the parties did not want them on account of them not being fat enough for market, and the other party would not buy them on account of not being enough ewe lambs in the bunch. There was about 170 grown ewes in the bunch; the balance being lambs. The only thing that I noticed wrong with this shipment was that a few lambs had the wool eaten off of the hips, making a spot about three inches square, and all the sheep were somewhat drawn from the long trip. Did not see any dead sheep, as I did not see them unloaded. I will further state that, if they had have been my sheep, I would not have claimed any damages on any of the live sheep, as they were not damaged, as far as I could see. They were of course drawn, but this should have been expected considering the long haul. In my opinion pay for the deads in the shipment would cover the entire damage.
"[Signed] John Potter."

Counsel for appellants stated that he had read this statement to the witness in the anteroom, just before putting him on the stand, and that he stated the same was true. Counsel expected witness to so testify, and that he was surprised at the testimony given by this witness upon cross-examination. No objection was made by counsel for appellants to the introduction of this testimony; the only objection made being that, when counsel for appellants asked this witness if the first time that he had talked to him about this case was not "this morning before I put you on the stand," appellees objected to this question on the ground that the same was prejudicial. Counsel for appellants thereupon stated to the court the facts in reference to this witness as above set out, reading to the court, in the absence of the jury, the written statement by witness Potter. The court then asked:

"What is the object of that testimony? Answer: To show that he made a different statement.
"The Court: For the purpose of bearing; for the purpose of the jury passing on the credibility of the witness? Answer: Yes, and the truth of this statement; I offer it for all purposes.
"The Court: I will not permit you to offer it for that purpose and read the statement and ask him if he made it. I will exclude the statement and give you a bill. Answer: And let me show in the bill the preliminaries before I put him on the stand?
"The Court: Yes."

It is a general rule of law that a party will not be permitted to impeach his own witness, and this is absolute as to the general reputation of such witness, but it is held in this state that, when a party has been misled by his witness, and is surprised at his testimony, he may impeach him by showing that he has made a statement different from the testimony given at the trial. Railway v. McAllister, 41 Tex. Civ. App. 131, 90 S. W. 933.

We hold that the court erred in not permitting the attorney for appellants to introduce this written statement. It is true that it was not admissible for the purpose of showing the truth of the statement, as such testimony would have been hearsay, but it was admissible for one of the purposes for which it was offered, namely, to impeach the witness, and should have been admitted for that purpose. The court should have instructed the jury that it was admissible for no other purpose.

[7, 8] Appellants insist that the nature of damages allowed by the court upon the verdict of the jury is improper in this case, for the reason that these sheep were shipped under a contract wherein the value of the sheep was limited to $3 per head. This shipment was made while the railway was under control of the government, and such restriction as to the value of the property was permissible. The contract stated that the rate on the shipment was based upon the value of the sheep, to wit, $3 per head. We quote from the contract as follows:

"(3) The shipper hereby represents and agrees that his live stock does not exceed in value the prices below named, it being understood that the rate given is based upon such limit of valuation, which is the highest value accepted for the lower rate (animals of a higher value being charged a higher rate); and in case of loss or damage from any cause for which the company may be liable, payment shall be made therefor only on the basis of the actual cash value at the time and place of shipment, but in no case to exceed the following, which is understood not to exceed the value as held by the shipper, to wit: * * * Each sheep, per head, $3."

We sustain the contention of appellants that under this contract $3 per head is all that appellees were entitled to recover as to the sheep that were killed or lost in the shipment. Appellants' contention is that, inasmuch as the verdict of the jury shows that the damage to the remaining sheep was $1

per head, and that the value of such sheep, if they had been delivered at Santa Anna without injury, would have been $12 per head; that therefore the appellees are entitled to recover only such proportion of the $1 per head injury as $3 per head bears to $12 per head. In other words, that, as the jury found that the damage was $1 per head, the amount. that appellees could have recovered under this contract would be 25 cents per head. We do not think this is a proper construction of this contract. Our construction is that the shipper is entitled to recover whatever damages were sustained by reason of the negligence of the railway, not to exceed $3 per head. If this is not the plain construction of this contract, it is at least ambiguous, and, such being the case, the contract having been drawn by the railway company, the rule as to contracts drawn by insurance companies, namely, that it should be construed most strongly against the company, applies to this contract.

This case will be reversed and remanded, with instructions to the trial court to allow $3 per head for each sheep lost or that died, and whatever the evidence may show to be the difference between the value of the sheep in the condition in which they should have arrived at Santa Anna but for the negligence, if any, of the railway company, and their value in the condition in which they did arrive, not in any event to exceed $3 per head.

Reversed and remanded, with instructions.